UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL PRESBYTERIAN CHURCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> GUIDEONE MUTUAL INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 13-1847 (JDB) |

**MEMORANDUM OPINION**

In August 2011, an earthquake struck Washington, D.C., damaging National Presbyterian Church. The church's exterior is comprised of hundreds of limestone panels, some of which were cracked or otherwise damaged by the earthquake. So the church filed an insurance claim to repair the damage. But the church fears that merely replacing the damaged panels would diminish the aesthetic qualities of the façade, as the new, unweathered panels could have noticeably different coloration than the remaining panels. Thus, the church believes that GuideOne, its insurer, is required to pay for repairs that not only fix the structural damage, but also create a matching façade. Both parties seek a declaratory judgment as to the matching issue. Because the insurance policy is ambiguous, the Court must find in favor of the church: hence, matching is required.[1]

---

[1] The church has moved, in the alternative, to strike GuideOne's relevant defenses. The Court need not reach the issue—but in any event, Federal Rule of Civil Procedure 12(f) is hardly an appropriate procedural vehicle. See, e.g., Kelly v. United States, 809 F. Supp. 2d 429, 433 (E.D.N.C. 2011) ("Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." (internal quotation marks and citation omitted)). The text of the rule applies to "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); see also Bradshaw v. Hilco Receivables, LLC, 725 F. Supp. 2d 532, 535 (D. Md. 2010) (explaining that a defense is

## BACKGROUND

The parties agree that the damaged panels themselves are covered by the insurance policy—and, at least for the purposes of this motion, that fixing only those panels would not exceed the deductible.  The question at issue, then, is whether the policy requires GuideOne to pay for repairs that match aesthetically, rather than repairs that merely function.[2]

The insurance policy's "Building and Personal Property Coverage Form" explains that GuideOne "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  Ex. A to Compl. ("Ins. Policy") [ECF No. 17-1] at 45.  "Covered Property," in turn, "means the type of property described in this section, A.1, and limited in A.2, Property Not Covered."  Id.  Under that designation, "Covered Property" refers in part to the "Building, meaning the building or structure described in the Declarations," including fixtures, outdoor furniture, and fences.  Id.

The loss payment provision explains that:

> In the event of loss or damage covered by this Coverage Form, at our option, we will either:
> (1) Pay the value of lost or damaged property;
> (2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below [relating to ordinances regarding construction];
> (3) Take all or any part of the property at an agreed or appraised value; or
> (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.
> We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

---

"insufficient . . . if it does not meet the pleading requirements of Rules 8 and 9").  The church does not even attempt to argue that any of these adjectives apply to GuideOne's well-pleaded defenses.

[2] In its complaint and briefs on this motion, the church implied that it would not be satisfied unless GuideOne were to replace all of the limestone panels, damaged and not, to ensure a perfectly matching façade.  See, e.g., Mem. Supp. Pl.'s Mot. Partial J. Pleadings [ECF No. 18-1] at 4 (decrying GuideOne's refusal to replace each undamaged panel).  At the December 5, 2014, motion hearing, however, the church clarified its position.  It now professes to seek matching through less comprehensive means, such as cleaning the older panels to make them look new again.  Indeed, the church now avers that no undamaged panels would need to be replaced.

Id. at 65.  And the Valuation Condition provides that:

> We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to **f.** below [regarding ordinances]:
> (1) The Limit of Insurance (or when it applies, the "Increased Limit of Insurance") applicable to the lost or damaged property;
> (2) The cost to replace, on the same premises, the lost or damaged property with other property:
>     (a) Of comparable material and quality; and
>     (b) Used for the same purpose; or
> (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

Id. at 67.  Both parties, offering competing interpretations of these provisions, now seek partial judgment on the pleadings to determine whether the policy requires coverage of the costs to ensure a matching façade.

## LEGAL STANDARD

A motion for judgment on the pleadings is appropriate where, as here, "the pleadings are closed . . . but [it is] early enough not to delay trial." Fed. R. Civ. P. 12(c).  The Court may grant judgment where "the moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotation marks omitted).  And "[t]he construction of terms in an insurance contract like the one before this Court [is a] matter[] of law to be determined by the Court." John Akridge Co. v. Travelers Cos., 876 F. Supp. 1, 1–2 (D.D.C. 1995).  The parties appear to agree that D.C. law applies to this dispute.  See Pl.'s Mot. at 7 n.5 (noting that the District of Maryland had transferred GuideOne's related action to this Court because the church property is located in D.C.).

## ANALYSIS

In determining the requirements of coverage, courts "must first look to the language of the contract." Cameron v. USAA Prop. & Cas. Ins. Co., 733 A.2d 965, 968 (D.C. 1999).  And

"unless it is obvious that the terms used in an insurance contract are intended to be used in a technical connotation, [the Court] must construe them consistently with the meaning which common speech comports." Id. (internal quotation marks, citation, and alteration omitted). "The terms of a written contract will be deemed unambiguous when a court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." Smalls v. State Farm Mut. Auto Ins. Co., 678 A.2d 32, 35 (D.C. 1996) (internal quotation marks and citation omitted). If the language is unambiguous, it "speaks for itself and binds the parties without the necessity of extrinsic evidence." Cameron, 733 A.2d at 968 (internal quotation marks and citation omitted).

"Failing such unambiguous language," however, "doubt should be resolved in favor of the insured." Holt v. George Washington Life Ins. Co., 123 A.2d 619, 622 (D.C. 1956) (internal quotation marks omitted). A court will not, of course, "torture words to import ambiguity where the ordinary meaning leaves no room for" it. Redmond v. State Farm Ins. Co., 728 A.2d 1202, 1206 (D.C. 1999) (internal quotation marks and citations omitted). But "if there are a number of reasonable readings of a policy provision, the insured is entitled to the one favoring coverage." Continental Cas. Co. v. Beelar, 405 F.2d 377, 378 (D.C. Cir. 1968); see also M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971) ("With respect to decisions of the United States Court of Appeals rendered prior to February 1, 1971, we recognize that they . . . constitute the case law of the District of Columbia.").

With those principles in mind, the Court must decide whether the language of the contract unambiguously provides for or against matching, or if the question remains ambiguous. The parties note a dearth of controlling authority, and so cite to numerous cases from other jurisdictions. Indeed, the only D.C. case deemed relevant is a landlord-tenant dispute, rather

4

than an insurance case.  See Withers v. Wilson, 989 A.2d 1117 (D.C. 2010).  And overall, other jurisdictions are split.  Compare, e.g., Cedar Bluff Townhome Condo. Ass'n, Inc. v. Am. Family Mut. Ins. Co., 2013 WL 6223454, at *4 (Minn. Ct. App. Dec. 2, 2013) (finding ambiguity where "a reasonable person could understand that 'comparable material' means material that is the same color as the damaged property"), with, e.g., Woods Apartments, LLC v. U.S. Fire Ins. Co., 2013 WL 3929706, at *2 (W.D. Ky. July 29, 2013) ("Plaintiffs' interpretation, that they are entitled to replacement of the roof and siding of all the apartment buildings to achieve cosmetic matching, would be unduly burdensome on Defendants and would essentially result in a windfall to Plaintiffs.").  Most of the cases the parties submit, however, are unilluminating.  Some, for instance, rely on state statutes providing for matching, see, e.g., Dolecki v. Nationwide Mut. Ins. Co., 2005 WL 578648, at *4 (Ohio Ct. App. March 7, 2005), others relate to materially different policy language, see, e.g., Greene v. United Servs. Auto. Ass'n, 936 A.2d 1178, 1186 (Pa. Super. Ct. 2007) (policy refers to "part" of the damaged building), and some do not even discuss the policy language at all, see, e.g., Bennett v. State Farm Ins. Co., 869 So.2d 321, 326 (La. Ct. App. 2004).

As a result, none of these cases are particularly valuable to the dilemma here.  Rather, the crux of the issue seems to be whether this policy's coverage of damaged property refers to the smallest unit possible (an individual panel, a single shingle, a specific patch of flooring) or to one larger (the entire façade, the whole roof, a continuous stretch of flooring).  The policy defines "covered property" broadly, as a "building," inclusive of fixtures, floor coverings, and appliances. Ins. Policy at 45.  But the loss payment provision could be read differently—perhaps more narrowly—referring only to "lost or damaged property," or to "property" generically, without further description.  Id. at 65.

That loss payment provision offers four different modes of coverage, between which GuideOne is free to choose. Of the four, two refer to "lost or damaged property," and two to "property" alone. Id. GuideOne accepts that, under that loss payment provision, the "property" can be "[r]epair[ed], rebuil[t] or replace[d] . . . with other property of like kind and quality," id., and admits that such "property" is a "broader" designation. See Def.'s Mem. Opp'n [ECF No. 21] at 7. The provision certainly could be read either way, to repair a shingle or replace a roof—one of like kind and, therefore, matching. Moreover, the same provision offers an option to "[t]ake all or any part of the property at an agreed or appraised value." Ins. Policy at 65. In that context, it would be absurd to suggest that the "property" of which the insurance company could take a "part" is an apparently indivisible limestone panel.

GuideOne, however, believes that there is a meaningful difference between those provisions and the two that refer to "lost or damaged property." If one reads "property" broadly, GuideOne argues, one must read "lost or damaged property" to mean something less comprehensive. Perhaps, but this is a subtle point. And it is unclear that the qualification must designate a smaller scope. An insured reading the policy, moreover, might well surmise that there would be no meaningful difference between the insurer's choice to undertake repairs itself ("property"), rather than reimbursing the insured for repairs ("lost or damaged property"): it is hard to see how or why the repairs themselves would differ so dramatically depending on who pays. If the four options really did vary dramatically in scope, then the two referencing "property" would be meaningless, for no insurer would choose to pay more than necessary. Such surplusage presents a reading far more difficult to reconcile than one that cannot fully account for the words "lost or damaged." Therein lies ambiguity at least.

Moreover, a term equivalent to "like kind and quality" is referenced in each of the loss payment provision options (incorporating the valuation condition), those that qualify "property" and those that do not—and that phrase could, itself, be read to require matching. "[A] reasonable person could understand," for instance, "that 'comparable material'"—a description used in this policy's valuation condition, Ins. Policy at 67—"means material that is the same color as the damaged property." Cedar Bluff Townhome Condo. Ass'n, Inc., 2013 WL 6223454, at *4. Similarly, "other property of like kind and quality" could be read to mandate property that looks the same. Imagine that an insurance company pays for repairs to one wall of an insured's dining room. The room's paint color—a light blue—is no longer manufactured. If the insurance company were to insist on a bright red or even dark blue paint—of the same quality and manufacture—just for that single wall, no one would feel that the insured had been made whole; only repainting the whole room would do that. Unless, that is, the policy had put forth an exclusion to that effect—which GuideOne certainly knows how to do, see Pl.'s Mem. at 16 (pointing out that the policy language quoted above expressly excludes costs incurred as a result of local ordinances), but declined to do here.

Hence, the policy is ambiguous. As a result, the Court must find in favor of the insured. See Holt, 123 A.2d at 622. Matching is therefore required.

## CONCLUSION

For the reasons set forth above, the church's motion for partial judgment on the pleadings is granted. A separate Order will issue on this date.

Dated: February 11, 2015

/s/
JOHN D. BATES
United States District Judge